## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 15 |
| ALL BLUE INVESTMENTS NORTH STAR 1 LTD, *et al.*,[1] | Case No.: 24-23015 |
| | (Joint Administration Requested) |
| Debtors in a Foreign Proceeding. | |

### VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR AN ORDER AND FINAL DECREE GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDINGS AND OTHER RELATED RELIEF

Martin Trott and Nathan Mills, in their capacities as duly appointed joint liquidators (the "**Liquidators**" or "**Foreign Representatives**") of All Blue Investments North Star 1 Ltd. (in Liquidation) ("**NS1**") and All Blue Investment Management Ltd. (in Liquidation) ("**ABIM**" and, together with NS1, the "**Foreign Debtors**") under section 159(2) of the Insolvency Act 2003 (as amended) (the "**Insolvency Act**"), by their undersigned counsel, submit the Official Form Petitions, this Verified Petition (together, the "**Petitions**"), the *Motion of the Foreign Representatives for Chapter 15 Recognition and Relief* (the "**Recognition Motion**"), the *Memorandum of Law in Support of Motion of the Foreign Representatives for Chapter 15 Recognition and Final Relief* (the "**Recognition Memorandum**"), the accompanying Declaration of Grant Carroll (the "**Carrol Declaration**") and the Declaration of Martin Trott (the "**Trott Declaration**" and together with the Carrol Declaration, the "**Declarations**"), for entry of an Order under chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"):

(i) Recognizing the Foreign Representatives as the Foreign Debtors' "foreign representatives" as defined in section 101(24) of the Bankruptcy Code;

---

[1] The Foreign Debtors in these chapter 15 cases, along with the last four digits of each Foreign Debtor's federal tax identification number, are: All Blue Investments North Star 1 Ltd. (3076); and All Blue Investment Management Ltd. (5280). The Foreign Debtors' address for the purpose of these chapter 15 cases is: c/o R&H Restructuring (BVI) Ltd., Little Denmark Building, Unit 3a, 147 Main Street, PO Box 3162, Road Town, Tortola, British Virgin Islands, VG1110.

(ii) Recognizing the BVI Proceedings as "foreign main proceedings" in accordance with sections 101(23), 1502(4), and 1517(a) and (b)(1) of the Bankruptcy Code, or, in the alternative, as foreign nonmain proceedings under section 1502(4) and 1517(b)(2) of the Bankruptcy Code;

(iii) Granting all relief provided by section 1520 of the Bankruptcy Code, upon recognition of the BVI Proceedings as foreign main proceedings, including without limitation, imposing the automatic stay of section 362 of the Bankruptcy Code in favor of the Foreign Debtors, and any property of the Foreign Debtors that is within the territorial jurisdiction of the United States throughout the duration of these chapter 15 cases or until otherwise ordered by this Court;

(iv) Providing additional assistance or appropriate relief upon recognition of the BVI Proceedings as foreign main proceedings, or, in the alternative, foreign nonmain proceedings, under sections 1507 and 1521 of the Bankruptcy Code, including providing for the examination of witnesses, the taking of evidence, or the delivery of information concerning the Foreign Debtors' assets, affairs, rights, obligations or liabilities;

(v) Granting the Foreign Representatives the rights and protections to which they are entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of U.S. Courts over the Foreign Representatives in accordance with sections 306 and 1510 of the Bankruptcy Code; and

(vi) Granting such other relief as may be necessary and appropriate, including entry of a final decree after entry of the order granting the relief requested.

## PRELIMINARY STATEMENT[2]

1. Prior to the commencement of the BVI Proceedings, the Foreign Debtors were at all times organized under British Virgin Islands ("**BVI**") law and maintained registered addresses in the BVI.

2. The Foreign Debtors are each in liquidation proceedings under section 159(2) of the Insolvency Act[3] that commenced upon the written resolutions to appoint the Liquidators (the "**Resolutions**").

---

[2] Capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below.

[3] Excerpts of the relevant provisions of the Insolvency Act are attached as Exhibit A to the Carroll Declaration.

2

3. Under the Insolvency Act, either the BVI court or the members of a company may appoint a liquidator of a company. The liquidation commences upon the appointment of the liquidator and continues until it is terminated by the Court. *See* Insolvency Act, §§ 160, 232, 233. The effect of a liquidation under the Insolvency Act is, among other things, giving custody and control of the assets of the company to the liquidators and attempts by creditors to execute on or attach assets of the company are restricted. *Id.*, §§ 175 and 176. As a member appointed liquidator, the Liquidators were required by the Insolvency Act to call a meeting of creditors. *Id.* § 179. The Liquidators held the first meeting of creditors on April 17, 2024. *See* Trott Decl. ¶ 3. During liquidation proceedings, the liquidating company is considered to be in liquidation and the liquidators remain subject to BVI court supervision and have access to the BVI court to file applications or submissions in furtherance of the liquidation. *See* Insolvency Act, §§ 160, 164 (liquidator acts as an officer of the Court), 183(5), and 186(3).

4. Since their appointment, the Liquidators' efforts to facilitate and direct the BVI Proceedings include, but are not limited to: (i) filing and publishing all required notices and consents, including with the BVI Registrar of Corporate Affairs; (ii) liaising with and providing notices to stakeholders, banks, custodians, and other interested parties, including the Foreign Debtors' shareholders and members; (iii) collecting and reviewing the Foreign Debtors' books and records and conducting investigations in relation to potential assets and liabilities; (iv) receiving and reviewing the Foreign Debtors' financial statements to determine their solvency, or lack thereof; (v) holding meetings of creditors of the Foreign Debtors; (vi) drafting reports to the creditors of the Foreign Debtors; (vii) adjudicating creditor claims; (viii) declaring an interim distribution of the Foreign Debtors' assets and (ix) performing statutory obligations under the Insolvency Act. *See* Trott Decl. ¶ 35.

5. These wind down efforts proceed from the BVI.

6. Accordingly, the Foreign Representatives respectfully submit that the BVI Proceedings should each be recognized by this Court as a "foreign main proceeding" under section 1517(b)(1) of the Bankruptcy Code, or, in the alternative, as a "foreign nonmain proceeding" under section 1517(b)(2) of the Bankruptcy Code.

7. First, the Foreign Representatives are "person[s]," as contemplated in subsections 101(24) and 101(41) of the Bankruptcy Code and were duly appointed by the Resolutions as the joint liquidators of the Foreign Debtors.

8. Second, the BVI Proceedings are each a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code because the BVI Proceedings constitute collective judicial proceedings conducted in the BVI under the law related to insolvency or debt adjustment (*i.e.*, the Insolvency Act), which establishes a comprehensive framework determining how the Foreign Debtors' assets will be administered, retrieved and distributed. Additionally, the BVI Proceedings are each a "foreign main" proceeding because section 1516(c) of the Bankruptcy Code presumes that the Foreign Debtors' center of main interests is in the BVI. The Foreign Debtors are entitled to that presumption here because they are BVI-registered entities that presently and have always maintained registered offices in the BVI, where BVI Proceedings are taking place.

9. Third, the Petitions comply with section 1515 of the Bankruptcy Code. Specifically, as required by section 1515(b) of the Bankruptcy Code, the Petitions are accompanied by copies, in English, of the Resolutions appointing the Liquidators and commencing the BVI Proceedings. Additionally, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representatives filed a statement with the Official Form Petitions identifying the BVI Proceedings as the only proceedings concerning the Foreign Debtors and stating that there

4

are no other pending foreign proceedings known to the Foreign Representatives concerning the Foreign Debtors.  Further, as required by section 1515(d) of the Bankruptcy Code, all documents provided pursuant to section 1515(b) of the Bankruptcy Code are in English.  Finally, as required by rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Foreign Representatives filed a statement identifying that the Foreign Debtors are not presently involved in pending litigation in the United States.

10. Fourth, the Foreign Representatives have made a showing that ancillary relief under sections 1520 and 1521 of the Bankruptcy Code is proper because the Liquidators seek to undertake an investigation of the Foreign Debtors and the circumstances that led to their insolvency.  In particular, the Foreign Representatives intend to request discovery that centers on certain investment transactions, the Foreign Debtors' relationship with certain affiliated entities under common control of the Directors, and the potential mismanagement of the Foreign Debtors.  The requested discovery will better enable the Foreign Representatives to evaluate litigation claims that may be pursued, including in the United States, which could result from the discovery of certain affiliates and other entities associated with the Foreign Debtors.

11. In sum, all of the conditions to entry of an order recognizing the BVI Proceedings as foreign main proceedings under the Bankruptcy Code have been satisfied.

12. Recognition of the BVI Proceedings under chapter 15 of the Bankruptcy Code will serve the exact purpose of its enactment by ensuring that the BVI Proceedings continue in a fair, efficient, uninterrupted, and centralized manner with the goal of maximizing the value of the Foreign Debtors' estates for the benefit of all stakeholders.  The Court should enter an Order recognizing the BVI Proceedings as foreign main proceedings.

13. In the alternative, because the Foreign Debtors maintained nontransitory activity in the BVI, the Court should recognize the BVI Proceedings as "foreign nonmain proceedings." As noted above, the Foreign Debtors are incorporated under BVI law and have always maintained registered offices in the BVI. In addition, throughout their existence, the Foreign Debtors have engaged in business with law firms and other service providers based in the BVI.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over these cases under sections 157 and 1334 of title 28 of the United States Code and section 1501 of the Bankruptcy Code.

15. The Foreign Representatives have properly commenced these cases under sections 1504 and 1515 of the Bankruptcy Code. This is a core proceeding under section 157(b)(2)(P) of title 28 of the United States Code.

16. Venue for these cases is proper under section 1410(1) of title 28 of the United States Code because each Foreign Debtor has principal assets in this district through a continuing ownership interest in a retainer on deposit in a trust account for the Miami, Florida office of DLA Piper LLP (US). The Foreign Debtors additionally have assets in Florida in the form of a receivable from Big 5 Sponsor LLC, a limited liability company established in Florida.

17. The statutory bases for the relief requested are sections 101(23)-(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521, 1522, and 1524 of the Bankruptcy Code.

## BACKGROUND

A. **The Foreign Debtors' Formation and Management**

   1. **NS1's Formation and Management**

18. NS1 was incorporated as a Business Company in the BVI on March 4, 2022, under BVI Company No. 2093076.

19. NS1 is a Professional Fund under the BVI Securities and Investment Business Act, 2010 (as amended) (the "**SIBA**"), which means that it is an open-ended investment fund permitted to issue shares only to Professional Investors (as defined in the SIBA).

20. NS1's directors are Messrs. Daniel Edward Llewellyn Cookson and Matthew Holden Novak (the "**Directors**").

21. The sole holder of the single management share in NS1 is Elea Investments Ltd, formerly known as All Blue Investments (DIFC) Ltd. ("**All Blue Investments**"). Mr. Cookson is the sole shareholder and director of All Blue Investments. The Liquidators understand that Mr. Novak was a director of All Blue Investments until March 2024.

22. NS1 is governed by a Memorandum and Articles of Association adopted on March 4, 2022.

23. NS1 continues to maintain a registered office at Ogier Global (BVI) Limited, Ritter House, Wickhams Cay II, Road Town, Tortola VG1110, British Virgin Islands.

**2.  ABIM's Formation and Management**

24. ABIM was incorporated as a Business Company in the BVI on November 1, 2023 under BVI Company No. 2135280.

25. ABIM's directors are Messrs. Cookson and Novak.

26. ABIM is governed by a Memorandum and Articles of Association adopted on November 1, 2023.

27. ABIM continues to maintain a registered office at Ogier Global (BVI) Limited, Ritter House, Wickhams Cay II, Road Town, Tortola VG1110, British Virgin Islands.

**B.  The Nondebtor Affiliates**

28. Red Rowan Investments Ltd. ("**Red Rowan**") is an exempt Cayman Islands Company, registered on November 30, 2021 under company number 384122. Red Rowan's

7

registered address is Maples Corporate Services Limited, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman KY1-1104, Cayman Islands.

29. Washington Muse Investments SPC (f/k/a All Blue Investments North Star 2 SPC) ("**NS2**") was incorporated in the Cayman Islands on August 22, 2022 as an exempt segregated portfolio company under company number 393559. NS2's registered office is Walkers Corporate Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY19008, Cayman Islands.

30. NS2 established three segregated portfolios (collectively, the "**NS2 SPs**").

31. Messrs. Novak and Cookson are also the directors of Red Rowan and NS2. Therefore, there was common control amongst NS1, ABIM, Red Rowan and NS2. The Liquidators believe that the operations of the companies were coordinated; Red Rowan and NS1 effectively operated as a single entity, NS2 operated as a sister fund to NS1, and ABIM provided investment management services to NS1 and NS2.

    **C.**    **The Foreign Debtors' Operations**

32. NS1 is a fund that solicited investments with the objective of long-term capital appreciation by trading and investing in a wide variety of securities, instruments, including fixed income instruments and other investment opportunities, either directly or indirectly through investments in other funds. To achieve that objective, NS1's confidential information memorandum dated January 2024 stated that it would use a broad array of investment strategies, including long-short equity, event-driven investing, merger arbitrage, capital structure arbitrage, private equity and private investment in public equity ("**PIPE**") investing.

33. Initially, Akula Investment Management Limited (BVI) ("**Akula**") was NS1's investment manager.

34. On September 7, 2022, Red Rowan entered into a trading services agreement with Akula which authorized Red Rowan to provide trading consultancy services to NS1.

35. Shortly after its incorporation, on November 27, 2023, ABIM entered into an investment management agreement with NS1, replacing Akula as NS1's exclusive investment manager. ABIM also provided investment management services to each of the NS2 SPs.

**D.    DWAC Investment and Big 5 Sponsor LLC Loan**

    **1.  DWAC Investment**

36. On December 11, 2020, Digital World Acquisition Corp. ("**DWAC**"), a Delaware corporation, was established as a special purpose acquisition company.

37. In September 2021, DWAC completed an initial public offering ("**IPO**") and was listed as a public company on the NASDAQ. The Liquidators understand that by May 27, 2022, Red Rowan had committed an investment into DWAC. However, DWAC initially failed to achieve its business combination within the necessary timeframe and subscription amounts were cancelled.

38. By February 2024, the Directors again invested in DWAC, this time allocating the investment to NS2. ABIM was the investment manager of NS2.

39. DWAC completed its acquisition of Trump Media & Technology Group ("**TMTG**") on March 25, 2024, and TMTG commenced trading under the ticker "DJT."

40. On April 15, 2024, TMTG filed a registration statement with the U.S. Securities and Exchange Commission ("**SEC**") to register investors' shares. NS2 was listed as a selling shareholder. Based on NS2's holding position stated in the registration statement and the closing price of TMTG on April 15, 2024, the Liquidators estimate that NS2 received TMTG shares valued at approximately $185 million (the "**TMTG Stock**").

41. NS2 allegedly terminated its investment management agreement with ABIM on March 4, 2024 with immediate effect (despite a 90-day notice requirement in the investment management agreement), contemporaneously with its name change to Washington Muse

Investments SPC. The Liquidators are investigating whether the termination was valid and whether an incentive fee is payable to ABIM based on NS2's investment in DWAC. To date, the Directors have refused to provide the Liquidators with requested information regarding the circumstances of the alleged termination.

### 2. Big 5 Sponsor LLC Loan

42. DWAC's former CEO is Mr. Patrick Orlando.[4] Mr. Orlando controls Big 5 Sponsor LLC, a Florida limited liability company ("**Big 5 Sponsor**"). On or around October 28, 2022,[5] NS1, as lender, entered into a convertible loan agreement with Big 5 Sponsor, as borrower (as amended and restated on February 10, 2023, the "**Loan Agreement**"). Under the Loan Agreement, NS1 extended to Big 5 Sponsor loans in the aggregate principal amount of up to $2,900,000 (the "**Loans**").

43. The Loans are scheduled as assets in the books and records of NS1 provided to the Liquidators upon their appointment.

### E. The Naked Short Selling Trades

44. Between December 2023 and March 2024, ABIM conducted a series of trades with counterparts through Avalon Capital Partners Limited, Seaport Global Securities LLC, Mizuho Securities USA LLC, and Haitong International Securities Company Limited (together the "**Broker-Dealers**"). Many of the trades conducted by ABIM with these Broker-Dealers constituted naked short selling.

45. Short selling is a stock trading practice designed for investors to profit when a stock's price goes down. Short selling requires a trader to sell a stock before purchasing it. The

---

[4] On July 17, 2024, the SEC filed a complaint alleging that Mr. Orlando made materially false and misleading statements in connection with DWAC's IPO and its proposed merger with TMTG.

[5] The Loan Agreement is undated but defines "Closing Date" as October 28, 2022.

trader receives a profit if the stock price decreases between selling and purchasing it. In short selling, because the "sold stock" is not yet actually "owned" by the trader, third-party professional prime broker-dealers are used to provide the seller with "borrowed" shares, which are used to settle the trade. A "naked short sale" occurs if the trader does not have stock available to settle a trade. This ordinarily occurs if there is no stock to borrow from a broker-dealer to cover the trade. Naked short selling is prohibited by the SEC.

46. ABIM conducted numerous naked short selling trades through the Broker-Dealers on the NASDAQ. Neither ABIM nor NS1 had sufficient cash or stock to cover the trades, and when they could not deliver borrowed stock, the Broker-Dealers were left to cover the Foreign Debtors' losses. By March 27, 2024, the Foreign Debtors had incurred $126,748,939.29 in liabilities to the Broker-Dealers.

F.  **Concerns Relating to the Operations of the Foreign Debtors**

47. Since their appointment, the Liquidators have investigated the financial dealings of the Foreign Debtors. Those investigations have revealed facts that raise significant concerns regarding the conduct of the Directors and the management of the Foreign Debtors.

1. **Allocation of Profits and Losses**

48. The Liquidators are investigating whether the Directors coordinated trading activity between the Foreign Debtors, Red Rowan, and NS2 to allocate trading profits and losses as part of a broader scheme to cause the Foreign Debtors, and by design, their creditors, to incur trading losses while allocating trading profits to NS2 and Red Rowan.

49. The Liquidators have not been able to identify separate banking arrangements between NS1 and NS2; it is possible that both funds may have operated through the same bank account. Given the coordination between NS1 and NS2 and fees owed to ABIM, it is possible that a portion of the DJT Proceeds may be assets of the Foreign Debtors.

### 2. Naked Short Selling

50.     The circumstances of the naked short selling trades raise numerous questions that the Liquidators are investigating. Particularly, the combination of (i) the value and high-risk nature of ABIM's trades (and consequent losses to the Broker-Dealers), (ii) the compressed time frame in which the trades occurred, and (iii) the movement of trades across four distinct Broker–Dealers, is indicative of a deliberate trading scheme entered into by the Directors.

51.     Further, the Liquidators understand that the Broker-Dealers were not told whether the trades were being allocated to NS1 or NS2 at the time the trades were placed. Because the trades were not paid for, there is no financial trail to allocate the trades to a particular fund before the losses were incurred; the allocation of trading losses therefore necessarily occurred *after* the positions were closed, permitting the Directors to selectively allocate losses.

52.     The Liquidators are also investigating whether the naked short selling scheme violated U.S. and BVI securities laws and was part of a wider market manipulation scheme.

### G.    The BVI Proceedings

53.     As noted above, on March 27, 2024 (i) NS1, by written resolution of the sole management shareholder, All Blue Investments; and (ii) ABIM, by written resolution of the sole member, Mr. Cookson, were each put into voluntary liquidation, and the Foreign Representatives were appointed as joint liquidators of the Foreign Debtors.

54.     Since the commencement of the BVI Proceedings, the Liquidators have received creditor claims of more than $125 million resulting from the Foreign Debtors' naked short selling trades.

## BASIS FOR RELIEF

55.     For the reasons set forth in the Recognition Motion, the Court should enter the Proposed Recognition Order as the Foreign Representatives meet the standards for obtaining the

relief requested herein and otherwise satisfy the statutory requirements for recognition and related relief under chapter 15 of the Bankruptcy Code.

56. The Foreign Representatives respectfully submit that the BVI Proceedings should be recognized by this Court because, as required under section 1517 of the Bankruptcy Code, the Foreign Representatives applying for recognition are "persons," the BVI Proceedings are foreign main proceedings within the meaning of section 1502 of the Bankruptcy Code, and the Petitions meet the requirements of section 1515 of the Bankruptcy Code.

57. Section 1517(a) of the Bankruptcy Code authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding or a foreign non-main proceeding, (ii) the foreign representative applying for recognition is a person or body and (iii) the application for recognition was properly filed in accordance with section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a). Section 1517(b) of the Bankruptcy Code further provides that a proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests. *See* 11 U.S.C. § 1517(a).

58. The Foreign Representatives are "person[s]" within the meaning of section 101(41) of the Bankruptcy Code that have been appointed in accordance with BVI law, as memorialized in the Resolutions. *See* 11 U.S.C. § 1504. The BVI Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code because, among other reasons, the BVI Proceedings are collective judicial proceedings conducted in the BVI under the law related to insolvency or debt adjustment (*i.e.*, the Insolvency Act), which establishes a comprehensive framework determining how the Foreign Debtors' assets will be administered, retrieved and distributed.

59. Further, as required by section 1515(b) of the Bankruptcy Code, the Petitions are accompanied by copies of the Resolutions appointing the Liquidators and commencing the BVI Proceedings. *See* Petition [ECF No. 1], Ex. A. The Resolutions are in English and, thus, comport with section 1515(d) of the Bankruptcy Code. *Id*. In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representatives have filed a statement disclosing that, to the best of their knowledge, there are no other foreign proceedings pending with respect to the Foreign Debtors. The Foreign Representatives have, therefore, satisfied the conditions requiring entry of an order recognizing the BVI Proceedings. *See* 11 U.S.C. § 1517(a). Additionally, recognition of the BVI Proceedings is not manifestly contrary to the public policy of the United States. Based on the foregoing, the Foreign Representatives petition the Court for entry of an order recognizing the BVI Proceedings.

60. The BVI Proceedings should be recognized as foreign main proceedings because the Foreign Debtors' center of main interests is in the BVI. Specifically, the Foreign Debtors are formed under BVI law and, prior to the commencement of BVI Proceedings, had registered offices and headquarters in the BVI, and, therefore, the BVI is presumed to be the Foreign Debtors' center of main interests. *See* 11 U.S.C. § 1516(c).

61. Further, since the commencement of the BVI Proceedings, the Foreign Representatives have supervised the Foreign Debtors under and in accordance with the laws of the BVI. Since the BVI is the center of main interests for the Foreign Debtors, the BVI Proceedings should be recognized as foreign main proceedings. *Id*. § 1517(b)(1).

62. In the alternative, because the Foreign Debtors maintained nontransitory activity in the BVI, the Court should recognize the BVI Proceedings as "foreign nonmain proceedings." As noted above, the Foreign Debtors are incorporated under BVI law and have always maintained

registered offices in the BVI. In addition, throughout their existence, the Foreign Debtors have engaged in business with law firms and other service providers based in the BVI.

63. Upon recognition of the BVI Proceedings as foreign main proceedings, final relief is authorized by sections 1520 and 1521 of the Bankruptcy Code. In particular:

a. Upon recognition of the BVI Proceedings as foreign main proceedings, the Foreign Debtors are automatically entitled to the protections of the automatic stay of section 362 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1520(a)(1) and 362.

b. Also, upon recognition of the BVI Proceedings as foreign main proceedings, sections 363, 549 and 552 of the Bankruptcy Code apply to a transfer of an interest of the Foreign Debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate. *See* 11 U.S.C. § 1520(a)(2).

c. Further, upon recognition of the BVI Proceedings as foreign main proceedings, unless the Court orders otherwise, the Foreign Representatives may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552 of the Bankruptcy Code. *See* 11 U.S.C. § 1520(a)(3).[6]

d. The Court may also suspend the right to transfer, encumber or otherwise dispose of the Foreign Debtors' assets. *See* 11 U.S.C. § 1520(a).

e. Upon recognition of the BVI Proceedings as a foreign proceedings, the Court may, at the request of the Foreign Representatives, grant any additional relief that may be available to a trustee (except for the relief available under sections 522, 544, 545, 547, 548, 550 and 724(a)).

64. In the alternative, because the Foreign Debtors maintained an establishment in the BVI, the Court should recognize the BVI Proceedings as "foreign nonmain proceedings." "Establishment" is defined in chapter 15 of the Bankruptcy Code as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(5). As noted above,

---

[6] In the alternative, the Foreign Representatives are entrusted, if not as of right under section 1520 of the Bankruptcy Code, with the discretionary approval of the Court under section 1521 of the Bankruptcy Code, with the right to exercise the rights and powers of a trustee, and are entitled to administer and realize all or part of the Foreign Debtors' assets within the territorial jurisdiction of the United States. *See* 11 U.S.C. § 1521(a)(5).

the Foreign Debtors are incorporated under BVI law and have always maintained registered offices and conducted business in the BVI.

65. The Court also has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity. *See* 11 U.S.C. §§ 1507 and 1521. The Court's entry of the relief requested by the Petitions and of any additional assistance requested will not prohibit just treatment of holders of claims against the Foreign Debtors' property and will not prejudice its creditors. As such, the Foreign Representatives submit that the Court has the discretion to enter the additional assistance set forth in the attached proposed form of order.

## CONCLUSION

WHEREFORE, the Martin Trott and Nathan Mills, in their capacity as Foreign Representatives, respectfully petition the Court for recognition and relief under chapter 15 of the Bankruptcy Code, the relief requested in this Verified Petition, and for such other relief and assistance as may be necessary.

Dated: December 13, 2024
       Miami, Florida

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Rachel Nanes*
Rachel Nanes (FL Bar No. 85167)
Nicole McLemore (FL Bar No. 1010885)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8500 (Main)
Telephone: (305) 423-8563 (Direct)
Facsimile: (305) 675-8206
Email: rachel.nanes@us.dlapiper.com
       nicole.mclemore@us.dlapiper.com

- and -

R. Craig Martin (*pro hac vice* admission pending)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700 (Main)
Telephone: (302) 468-5655 (Direct)
Facsimile: (302) 778-7834
Email: craig.martin@us.dlapiper.com

*Counsel for the Foreign Representatives*

## **VERIFICATION**

I, Martin Trott, as one of the duly authorized foreign representatives, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am authorized to make this verification in my capacity as one of the duly appointed foreign representatives of All Blue Investments North Star 1 Ltd. (in Liquidation) and All Blue Investment Management Ltd. (in Liquidation), and that based upon reasonable and good faith investigations, and the knowledge and information known to me to date, the facts set forth in the *Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* are true and correct to the best of my knowledge, information, and belief.

Dated: December 12, 2024

Martin Trott, solely in his capacity as a Foreign Representative of All Blue Investments North Star 1 Ltd. (in Liquidation) and All Blue Investment Management Ltd. (in Liquidation)