**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 15 |
| ALL BLUE INVESTMENTS NORTH STAR 1 LTD, *et al.*,[1] | Case No.: 24-23015 |
| | (Joint Administration Requested) |
| Debtors in a Foreign Proceeding. | |

**DECLARATION OF MARTIN TROTT IN SUPPORT OF**
**VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**
**FOR AN ORDER AND FINAL DECREE GRANTING RECOGNITION**
**OF FOREIGN MAIN PROCEEDINGS AND OTHER RELATED RELIEF**

MARTIN TROTT hereby declares as follows:[2]

1.      I am a director of R&H Restructuring (Cayman) Ltd. ("**R&H**"), an insolvency and restructuring practice, with offices at Little Denmark Building, Unit 3a, 147 Main Street, PO Box 3162, Road Town, Tortola, British Virgin Islands, VG1110.

2.      On March 27, 2024, Nathan Mills, also of R&H Restructuring (BVI) Ltd., and I were appointed joint liquidators ("**Liquidators**") by qualifying resolutions (the "**Resolutions**") of the members of All Blue Investments North Star 1 Ltd. ("**NS1**") and All Blue Investment Management Ltd. ("**ABIM**," and together with NS1, the "**Foreign Debtors**") in accordance with section 159(2) of the British Virgin Islands ("**BVI**") Insolvency Act, 2003 (as amended) (the

---

[1]    The Foreign Debtors in these chapter 15 cases, along with the last four digits of each Foreign Debtor's federal tax identification number, are: All Blue Investments North Star 1 Ltd. (3076); and All Blue Investment Management Ltd. (5280).  The Foreign Debtors' address for the purpose of these chapter 15 cases is: c/o R&H Restructuring (BVI) Ltd., Little Denmark Building, Unit 3a, 147 Main Street, PO Box 3162, Road Town, Tortola, British Virgin Islands, VG1110.

[2]    Capitalized terms used but not defined in this declaration have the meanings given to such terms in the *Verified Petition Under Chapter 15 of the Bankruptcy Code for an Order and Final Decree Granting Recognition of Foreign Main Proceedings and Other Related Relief*, filed contemporaneously with this declaration.

"**Insolvency Act**"). True and correct copies of Resolutions are attached to the Petitions as Exhibit A.

3.      The Liquidators published notice of their appointment and organized the first meeting of creditors held on April 17, 2024, in accordance with sections 178(1) and 179(1) of the Insolvency Act.

4.      In accordance with section 175(1) of the Insolvency Act, the Liquidators obtained custody and control of the assets of the Foreign Debtors and Messrs. Daniel Edward Llewellyn Cookson and Matthew Holden Novak, the directors of each of the Foreign Debtors (the "**Directors**"), ceased to have any powers, functions or duties other than as required and/or permitted by the Insolvency Act.

5.      In accordance with section 185(1) of the Insolvency Act, the Liquidators further seek to protect and realize the assets of the Foreign Debtors.

## CORPORATE BACKGROUND

**A.      NS1's Formation and Management**

6.      NS1 was incorporated as a Business Company in the BVI on March 4, 2022, under BVI Company No. 2093076.

7.      NS1 is a Professional Fund under the BVI Securities and Investment Business Act, 2010 (as amended) (the "**SIBA**"), which means that it is an open-ended investment fund permitted to issue shares only to Professional Investors (as defined in the SIBA).

8.      NS1's directors are Messrs. Cookson and Novak.

9.      The sole holder of the single management share in NS1 is Elea Investments Ltd, formerly known as All Blue Investments (DIFC) Ltd. ("**All Blue Investments**").  Mr. Cookson is the sole shareholder and director of All Blue Investments.  The Liquidators understand that Mr. Novak was a director of All Blue Investments until March 2024.

10. NS1 is governed by a Memorandum and Articles of Association adopted on March 4, 2022.

11. NS1 maintains a registered office at Ogier Global (BVI) Limited, Ritter House, Wickhams Cay II, Road Town, Tortola VG1110, British Virgin Islands.

**B.  ABIM's Formation and Management**

12. ABIM was incorporated as a Business Company in the BVI on November 1, 2023 under BVI Company No. 2135280.

13. ABIM's directors are Messrs. Cookson and Novak.

14. ABIM is governed by a Memorandum and Articles of Association adopted on November 1, 2023.

15. ABIM maintains a registered office at Ogier Global (BVI) Limited, Ritter House, Wickhams Cay II, Road Town, Tortola VG1110, British Virgin Islands.

**C.  The Nondebtor Affiliates**

16. Red Rowan Investments Ltd. ("**Red Rowan**") is an exempt Cayman Islands Company, registered on November 30, 2021 under company number 384122. Red Rowan's registered address is Maples Corporate Services Limited, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman KY1-1104, Cayman Islands.

17. Washington Muse Investments SPC (f/k/a All Blue Investments North Star 2 SPC) ("**NS2**") was incorporated in the Cayman Islands on August 22, 2022 as an exempt segregated portfolio company under company number 393559. NS2's registered office is Walkers Corporate Limited, 190 Elgin Avenue, George Town, Grand Cayman, KY19008, Cayman Islands.

18. NS2 established three segregated portfolios (collectively, the "**NS2 SPs**").

19. The Directors are also the directors of Red Rowan and NS2. Therefore, there was common control amongst NS1, ABIM, Red Rowan and NS2. Based on our initial investigations,

3

the Liquidators believe that the operations of the companies were coordinated; Red Rowan and NS1 effectively operated as a single entity, NS2 operated as a sister fund to NS1, and ABIM provided investment management services to NS1 and NS2.

**D.      The Foreign Debtors' Operations**

20.      On December 11, 2020, Digital World Acquisition Corp. ("**DWAC**"), a Delaware corporation, was established as a special purpose acquisition company.

21.      In September 2021, DWAC completed an initial public offering ("**IPO**") and was listed as a public company on the NASDAQ.  The Liquidators understand that by May 27, 2022, Red Rowan had committed an investment into DWAC.  However, DWAC initially failed to achieve its business combination within the necessary timeframe and subscription amounts were cancelled.

22.      By February 2024, the Directors again invested in DWAC, this time allocating the investment to NS2.  ABIM was the investment manager of NS2.

23.      DWAC completed its acquisition of Trump Media & Technology Group ("**TMTG**") on March 25, 2024, and TMTG commenced trading under the ticker "DJT."

24.      On April 15, 2024, TMTG filed a registration statement with the U.S. Securities and Exchange Commission ("**SEC**") to register investors' shares.  NS2 was listed as a selling shareholder.  Based on NS2's holding position stated in the registration statement and the closing price of TMTG on April 15, 2024, the Liquidators estimate that NS2 received TMTG shares valued at approximately $185 million (the "**TMTG Stock**").

25.      NS2 allegedly terminated its investment management agreement with ABIM on March 4, 2024 with immediate effect (despite a 90-day notice requirement in the investment management agreement), contemporaneously with its name change to Washington Muse Investments SPC.  The Liquidators are investigating whether the termination was valid and

whether an incentive fee is payable to ABIM based on NS2's investment in DWAC. To date, the Directors have refused to provide the Liquidators with requested information regarding the circumstances of the alleged termination.

### E.    Big 5 Sponsor LLC Loan

26.    DWAC's former CEO is Mr. Patrick Orlando.[3] Mr. Orlando controls Big 5 Sponsor LLC, a Florida limited liability company ("**Big 5 Sponsor**"). On or around October 28, 2022,[4] NS1, as lender, entered into a convertible loan agreement with Big 5 Sponsor, as borrower (as amended and restated on February 10, 2023, the "**Loan Agreement**"). Under the Loan Agreement, NS1 extended to Big 5 Sponsor loans in the aggregate principal amount of up to $2,900,000 (the "**Loans**").

27.    The Loans are scheduled as assets in the books and records of NS1 provided to the Liquidators upon their appointment.

### F.    The Naked Short Selling Trades

28.    Between December 2023 and March 2024, ABIM conducted a series of trades with counterparts through Avalon Capital Partners Limited, Seaport Global Securities LLC, Mizuho Securities USA LLC, and Haitong International Securities Company Limited (together the "**Broker-Dealers**"). Many of the trades conducted by ABIM with these Broker-Dealers constituted naked short selling.

29.    Short selling is a stock trading practice designed for investors to profit when a stock's price goes down. Short selling requires a trader to sell a stock before purchasing it. The trader receives a profit if the stock price decreases between selling and purchasing it. In short

---

[3]    On July 17, 2024, the SEC filed a complaint alleging that Mr. Orlando    made    materially    false    and misleading statements in connection with DWAC's IPO and its proposed merger with TMTG.

[4]    The Loan Agreement is undated but defines "Closing Date" as October 28, 2022.

selling, because the "sold stock" is not yet actually "owned" by the trader, third-party professional prime broker-dealers are used to provide the seller with "borrowed" shares, which are used to settle the trade.  A "naked short sale" occurs if the trader does not have stock available to settle a trade. This ordinarily occurs if there is no stock to borrow from a broker-dealer to cover the trade.  Naked short selling is prohibited by the SEC.

30.     ABIM conducted numerous naked short selling trades through the Broker-Dealers on the NASDAQ.  Neither ABIM nor NS1 had sufficient cash or stock to cover the trades, and when they could not deliver borrowed stock, the Broker-Dealers were left to cover the Foreign Debtors' losses.  By March 27, 2024, the Foreign Debtors had incurred  $126,748,939.29 in liabilities to the Broker-Dealers.

**FINANCIAL STATUS OF THE FOREIGN DEBTORS**

31.     Based on our ongoing investigations and review of documents including, but not limited to, the claims of creditors submitted in the BVI Proceedings, the loans extended, the general ledgers, the books and records of the Foreign Debtors, and their financial documents, the Foreign Debtors appear insolvent in accordance with section 8(1)(c)(ii) of the Insolvency Act because the value of each Foreign Debtor's liabilities exceeds its assets.

32.     The Foreign Debtors' insolvency prompted the members of NS1 and ABIM to commence insolvency proceedings in accordance with the Insolvency Act.

**THE BVI PROCEEDINGS**

33.     The BVI Proceedings commenced upon the passing of the Resolutions.  The Liquidators have all of the powers conferred by section 186 of the Insolvency Act and, as officers of the BVI court, all actions taken and work performed by the Liquidators is subject to review by the BVI court.

34.    As of March 27, 2024, the assets of the Foreign Debtors are no longer in the custody and control of the Directors, but rather they are in the custody and control of the Liquidators in accordance with section 175 of the Insolvency Act.  Further, under section 175(1)(c)(i) of the Insolvency Act, no proceedings may be commenced or continued against the Foreign Debtors and/or debts enforced against the Foreign Debtors without the permission of the BVI court.

35.    Since our appointment, Mr. Mills and I have taken efforts to facilitate and direct the BVI Proceedings including, but are not limited to: (i) filing and publishing all required notices and consents, including with the BVI Registrar of Corporate Affairs; (ii) liaising with and providing notices to stakeholders, banks, custodians, and other interested parties, including the Foreign Debtors' shareholders and members; (iii) collecting and reviewing the Foreign Debtors' books and records and conducting investigations in relation to potential assets and liabilities; (iv) receiving and reviewing the Foreign Debtors' financial statements to determine their solvency, or lack thereof; (v) holding meetings of creditors of the Foreign Debtors; (vi) drafting reports to the creditors of the Foreign Debtors; (vii) adjudicating creditor claims; (viii) declaring an interim distribution of the Foreign Debtors' assets and (ix) performing statutory obligations under the Insolvency Act.

36.    These chapter 15 petitions are presented to this Court to protect the assets of the Foreign Debtors in accordance with the Insolvency Act, to provide the Liquidators assistance in carrying out their duties under the Insolvency Act, including taking discovery that will better enable the Liquidators to evaluate litigation claims that may be pursued, including in the United States, which could result from the discovery of certain affiliates and other entities associated with the Foreign Debtors, and to ensure that no US entity or person frustrates or hinders the Liquidators'

ability to recover property and properly distribute the assets of the Foreign Debtors or interferes with the Liquidators' rights and obligations under the Insolvency Act.

[<em>Remainder of page intentionally left blank</em>]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Dated: December 12 , 2024
Road Town, Tortola,
British Virgin Islands

By: _____
Martin Trott